IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RED OAKS WEST, INC., <br><br> Plaintiff, <br><br> v. <br><br> SPECIALTY TRUCKS & EQUIPMENT, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:15-cv-00128 <br><br> Judge Dee Benson |

Plaintiff Red Oaks West, Inc. ("Red Oaks") filed the instant lawsuit against Defendant Specialty Trucks & Equipment, Inc. ("ST&E"), claiming that ST&E intentionally made several material misrepresentations while negotiating the sale of a truck to Red Oaks.

Before the court is ST&E's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.  (Dkt. No. 4.)  The court heard oral argument on the motion on June 23, 2015.  At the hearing, Plaintiff was represented by David Kono.  Defendant was represented by Alyson McAllister.  Prior to the hearing, the court considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

The relevant facts in this case are not disputed.  ST&E is a corporation organized and operated by a husband and wife under the laws of the State of Iowa.  ST&E buys, sells and repairs specialty trucks.  In early 2013, a listing for the sale of a 2005 Ford F-750 Truck (the

"Truck") by ST&E was posted on www.treetrader.com—a third party website that holds itself out as "The World's Largest Site For Tree & Landscape Related Equipment!"  The listing advertised the Truck and provided ST&E's contact information.

    In March 2013, Red Oaks—a tree services business incorporated and operated exclusively in Utah—found the listing online and contacted ST&E.  Red Oaks was interested in the Truck because the Truck was equipped with a "forestry package" that would be helpful for Red Oaks' business.  Over the next few days, Red Oaks and ST&E exchanged approximately 30 telephone calls and 20 e-mails while negotiating the sale of the Truck.  Throughout the entire negotiation, ST&E communicated to Red Oaks exclusively from Iowa and Red Oaks communicated to ST&E exclusively from Utah.  In fact, Red Oaks did not even go to Iowa to inspect the Truck.  Nevertheless, on April 8, 2013, Red Oaks agreed to purchase the Truck "as is" from ST&E for $46,000.   Although ST&E offered to have its delivery company ship the Truck to Utah, Red Oaks decided to ship the Truck through other means.

    Immediately after receiving the Truck, Red Oaks discovered the Truck's alleged defect.  Red Oaks claims that the Truck does not have enough power to "drive forward in a safe and consistent manner."  (Dkt. No. 5 at 13.)  Upon discovering this alleged defect, Red Oaks consulted with a law firm in Des Moines, Iowa and threatened to sue ST&E in federal court in Iowa if some sort of agreement could not be reached between Red Oaks and ST&E regarding the Truck.  When no such agreement was reached, Red Oaks followed through and filed suit against ST&E.  However, rather than filing the suit in federal court in Iowa, it filed suit in a state court in Utah.  ST&E subsequently removed the case to federal court.

In its Complaint, Red Oaks claims that ST&E made a number of representations of material facts during the negotiations to sell the Truck.  Specifically, ST&E allegedly represented that the Truck was equipped with a forestry package, that the Truck was equipped with a Ford "drop-in" motor, and that Red Oaks could "rest assured" that the vehicle worked because ST&E had "gone over" the entire Truck.  (Dkt. No. 2-2 at 9.)  Red Oaks argues that the "foregoing [r]epresentations were of then-existing material fact and their reasonable implication—that the Truck would operate in a safe and consistent manner—was false."  *Id.*  Red Oaks also claims that ST&E made an omission of material fact by not disclosing that the Truck would not move forward or backward in a safe and consistent manner.  *Id.*  Based on these misrepresentations and omissions, Red Oaks alleges that ST&E breached the implied covenant of good faith and fair dealing, committed fraud, and made negligent misrepresentations.  *Id.*

On March 6, 2015, ST&E filed its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, arguing that this court has neither general nor specific personal jurisdiction in this case.  ST&E also argues that venue is improper because the alleged facts do not satisfy any of the conditions listed in 28 U.S.C. §1391, the federal venue statute.

Red Oaks responded on April 6, 2015.  Red Oaks concedes that this court cannot exercise general personal jurisdiction over ST&E.  Nevertheless, Red Oaks argues that the court can exercise specific personal jurisdiction because ST&E had sufficient contacts with Utah relating to the alleged improper conduct.  Similarly, Red Oaks argues that venue is proper because a substantial part of the events giving rise to the claims occurred in Utah.

## DISCUSSION

Due to the undisputed facts, this case squarely frames the issue of what is required for a court to be authorized to decide a controversy involving a nonresident defendant.  The simple question posed here is whether a family company in Iowa can be haled into a Utah court based solely upon the company's non-interactive internet advertisement to sell a truck and the company's dealings with a single Utah company regarding the sale of that truck.

### Personal Jurisdiction

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 91 (10th Cir. 2012) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

**I. Jurisdiction under Utah State Law**

The Utah legislature has expressly stated that the long arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."  Utah Code § 78B-3-201; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.'") (quoting *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985)).  Similarly, the Utah Supreme Court has stated that it "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."  *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430,

4

433 (Utah 1998). Therefore, following the direction of the Utah Supreme Court, and because the Utah long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process Clause, the court proceeds to determine whether the exercise of personal jurisdiction over Defendant meets federal due process standards.

## II.  Due Process Analysis

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe*, 326 U.S. at 316).

The minimum contacts standard can be met in two ways. First, a court may assert *specific* personal jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." *Burger King*, 471 U.S. at 472. Where no nexus exists between the forum-related activity and the injury sustained, the court may nevertheless exercise *general* personal jurisdiction over the defendant when the defendant's contacts are "so pervasive that personal jurisdiction is conferred by the 'continuous and systematic' nature of the defendant's in-state activities." *OMI Holdings*, 149 F.3d at 1090-91.

Here, both parties acknowledge that there is no general jurisdiction, so only a specific personal jurisdiction analysis is needed.

### A.  Specific Jurisdiction

The court's specific jurisdiction inquiry is two-fold.  First, the court must determine whether the defendant has such "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there.  *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).  These "minimum contacts" are established "'if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 472.)  Second, if the defendant's activities create sufficient minimum contacts, then the court must consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice."  *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).  "This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings*, 149 F.3d at 1091.

The United States Court of Appeals for the Tenth Circuit has explained that "an interplay exists between the two components, such that 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.'" *Id.* at 1091-92 (citation omitted).

### 1. Minimum Contacts

"[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 472.) The United States Court of Appeals for the Tenth Circuit has explained, however, that the "purposeful direction" requirement can appear in "different guises." *Id.* In contract cases, "we sometimes ask whether the defendant 'purposefully availed' itself" of the privilege of conducting business in the forum state; in the tort context, meanwhile, "we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state." *Id.* (citing *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004). Under either approach, the "shared aim of 'purposeful direction'" is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475.)

As noted by ST&E, one way to determine "purposeful direction" is through the "effects test" as articulated in *Calder v. Jones*, 465 U.S. 783 (1984). The Tenth Circuit has interpreted this test as authorizing personal jurisdiction if three showings are made: the defendant (a) commits "an intentional action"; (b) that is "expressly aimed at the forum state"; (c) with the "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072.

ST&E concedes that the first showing has been made because "the fact that Plaintiff has pled fraudulent actions by ST&E in its Complaint suffices for purposes of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction." (Dkt. No. 4 at 14.)  ST&E contends, however, that neither of the other two showings can be made in this case.  The court disagrees.

Regarding the second *Calder* requirement, the Tenth Circuit has clarified that "the 'express aiming' test focuses . . . on a defendant's intentions—where was the 'focal point' of its purposive efforts." *Dudnikov*, 514 F.3d at 1075.  ST&E's intentions are made clear through the contacts it made with Utah.  Such contacts include ST&E's advertisement for the Truck on www.treetrader.com, its communications and negotiations with Red Oaks, and the final agreement to sell the Truck to Red Oaks.

Although ST&E had no specific contact with Utah through the Internet advertisement on its own, the advertisement directly led to the e-mail and telephone negotiations between ST&E and Red Oaks regarding the sale of the Truck.  During these negotiations, ST&E learned that Red Oaks is located and operates in Utah.  It was, therefore, not just foreseeable but almost certain that the Truck would be brought to Utah and used there if Red Oaks bought it. Consequently, if ST&E knowingly made false representations to Red Oaks in order to induce Red Oaks to buy the Truck—which the court must assume happened for purposes of this motion—then ST&E's intention was clearly to push the Truck into Utah.  This intention is also evident from the fact that ST&E offered to deliver the Truck to Utah as part of the final agreement, even though Red Oaks ultimately turned this specific offer down and used a different method of delivery.

The alleged facts demonstrate that ST&E was not merely selling an object in Iowa to a passerby who would later bring the object to the forum state because of the fortuitous fact that the passerby lived there.  Instead, ST&E made specific assurances to a company that ST&E knew was located and operated in the forum state with the hope that the company would buy the allegedly defective Truck and relocate it there.  The court finds that such actions were expressly aimed at the forum state.

ST&E argues that Tenth Circuit precedent demonstrates that the express aiming test cannot be satisfied in this case.  (Dkt. No. 4 at 15 ; Dkt. No. 7 at 7–9.)  However, the cases cited by ST&E are distinguishable from the present case and even provide principles that establish that personal jurisdiction is appropriate here.  For example, in *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995), the Court found that personal jurisdiction did not exist in Utah despite the fact that the defendants, as part of a contract negotiation, exchanged many e-mails and phone conversations with the plaintiff while the plaintiff was physically located in Utah. The Court determined that these communications were merely supplemental and that the bulk of the actual negotiations between the parties took place in person in Nevada.  *Id.*  Importantly, the Court's decision to deny jurisdiction in Utah was not based on a rule that phone calls and e-mails between a forum resident and a nonresident are necessarily insufficient to establish personal jurisdiction over the nonresident.  The Court instead found that the defendants' actions were simply directed at a different state:

> "[T]he most important negotiations took place in Nevada, and the enterprise was designed to use Nevada resources to supply power to a Nevada utility.  Moreover, the lease and sublease expressly provided that their interpretation was governed by Nevada law. Unlike *Calder*, where the defendant's actions "were expressly aimed at" the forum jurisdiction and the forum jurisdiction was "the focal point" of the tort and its harm, the focal point of this relationship was Nevada rather than Utah."

9

*Id.* at 1080.  In the present case, the relevant e-mails and phone calls themselves—which simultaneously took place in both Utah and Iowa—constituted the important negotiations between the parties.  Additionally, the Truck was to be used in Utah and nothing in the final agreement indicated that a different state's law should govern.  Thus, by analogy to the Tenth Circuit's determination that the focal point of the defendants' actions in *Far West* was Nevada, the focal point of ST&E's actions in this case was Utah.  *See also Lee v. Frank's Garage & Used Cars, Inc.*, 2004 UT App 260, 97 P.3d 717 (ruling, for similar reasons, that personal jurisdiction existed in Utah where a Utah resident bought a rare car from a Virginia dealership).

Similarly, the Court's decision in *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86 (10th Cir. 2012) does not preclude personal jurisdiction in this case, but actually promotes it.  In *Grynberg*, the plaintiffs had originally been granted seventeen mining concessions by the Republic of Ecuador.  *Id.* at 88.  The plaintiffs claimed that the defendants stole their confidential information and persuaded Ecuador to revoke plaintiffs' concessions and award them instead to the defendants.  *Id.* at 89.  The Court ruled that Colorado did not have jurisdiction over the defendants even though one of the plaintiffs was a Colorado resident and two of the other plaintiffs had their primary place of business in Colorado.  *Id.* at 98.  The Court ruled that "the plaintiffs fail[ed] to show that the defendants expressly aimed their conduct at the forum state— here, Colorado.  Specifically, the 'focal point' of the alleged tort was Ecuador, where the oil field was located . . . and where [plaintiff] was injured when Ecuador allegedly cancelled [its] concessions."  *Id.* (ellipses in original) (citation omitted).  In contrast to the facts in *Grynberg*, the facts in the present case demonstrate that there is a more substantial connection to Utah than just Plaintiff's residency.  Not only is Red Oaks a Utah company that does business exclusively

in the forum state, but ST&E was trying to send the Truck to the forum state, and all of Red

Oaks' alleged injuries occurred there.  Thus, for the same reasons that Ecuador—and not

Colorado—was the focal point of the alleged tort in *Grynberg*, Utah was the focal point of

ST&E's action in this case.

Regarding the third *Calder* requirement, it is evident that ST&E knew that the brunt of

the injuries would be felt in Utah because ST&E knew that Red Oaks was located and operated

in Utah.  That is where Red Oaks would lose business it might have obtained if the Truck

worked properly, that is where Red Oaks would have to store the faulty Truck, and that is where

Red Oaks would feel the financial strain that comes from spending thousands of dollars on

equipment that does not serve its intended purpose.  Consequently, the court finds that all three

*Calder* requirements are met in this case.

Finally, having determined that ST&E "purposefully directed" its activities at the forum

state, the court has no difficulty concluding that Red Oak's injuries "arise out of" ST&E's

contacts with the forum jurisdiction.  *See Burger King*, 471 U.S. at 472.  Therefore, ST&E has

minimum contacts with Utah.

### 2.  Reasonableness

The court must still inquire whether the existence of personal jurisdiction would "offend

traditional notions of fair play and substantial justice."  *Dudnikov*, 514 F.3d at 1080 (quoting

*International Shoe*, 326 U.S. at 316).  This inquiry requires a determination of whether a district

court's exercise of personal jurisdiction is "reasonable" in light of the circumstances surrounding

the case.  *OMI Holdings*, 149 F.3d at 1091.  In this regard, the court should consider: "(1) the

burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's

interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in

obtaining the most efficient resolution of controversies, and (5) the shared interest of the several

states in furthering fundamental substantive social policies."  *Id.* at 1095; *World-Wide*

*Volkswagen*, 444 U.S. at 292.

 The analyses of minimum contacts and reasonableness are complimentary, such that the

reasonableness prong of the due process inquiry evokes a sliding scale:

> [T]he weaker the plaintiff's showing on [minimum contacts], the less a defendant need
> show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an
> especially strong showing of reasonableness may serve to fortify a borderline showing of
> [minimum contacts].

*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *OMI*

*Holdings*, 149 F.3d at 1092 (alterations in original) (quotations omitted)).  However, in a case

such as this, where the court has found that the defendant "purposefully ... directed [its]

activities" at Utah, the defendant "must present a compelling case that the presence of some

other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477.

ST&E is unable to meet this high standard.

<h3 style="text-align:center">a.  Burden on Defendant of Litigating in the Forum</h3>

 With respect to the first factor–the burden on defendant– ST&E has failed to sufficiently

support its allegation that litigating in Utah would impose an unreasonable burden on them.

ST&E contends only that it conducts all of its business in Iowa and "[i]n order to litigate this

case in Utah, ST&E will be forced to incur substantial additional legal costs and travel costs,

including appearing in Utah for depositions and appearing in this Court for trial."  (Dkt. No. 4 at

18.)  This inconvenience does not set ST&E apart from a typical nonresident defendant.

Furthermore, modern transportation and communication, and in particular the implementation of

12

electronic case filing, noticing and teleconferences, have to some extent lessened the burden to

out-of-state defendants.  *Toytrackerz v. Koehler*, Slip Copy, 2009 WL 1505705 (D. Kan.).  While

"inconvenience may at some point become so substantial as to achieve constitutional magnitude,

this is not such a case."  *Burger King*, 471 U.S. at 484 (internal citation omitted).

### b.  Forum State's Interest in Adjudicating the Dispute

With respect to the second factor, the court considers the interest of Utah in resolving the

dispute.  States have "an important interest in providing a forum in which their residents can seek

redress for injuries caused by out-of-state actors."  *OMI Holdings*, 149 F.3d at 1096.  In this case,

the court finds that Utah has a strong interest in adjudicating this controversy.  Red Oaks not

only resides in Utah, but has also potentially suffered significant injury and monetary damages

within the state.  *See Burger King*, 471 U.S. at 482-83.  The court is not persuaded by ST&E's

argument that Red Oaks waived the forum state's interest by initially hiring an Iowa attorney and

threating to file suit against ST&E in Iowa (Dkt. No. 4 at 18), and ST&E has not provided any

legal authority to support this proposition.

### c.  Plaintiff's Interest in Convenient and Effective Relief

This factor hinges on whether the plaintiff may receive convenient and effective relief in

another forum.  There is nothing in this case that indicates that Plaintiff's chances of recovery

will be greatly diminished if it has to litigate the matter in Iowa.  *OMI Holdings*, 149 F.3d at

1097 (noting that the third factor considers whether "plaintiff's chances of recovery will be

greatly diminished by forcing him to litigate in another forum.").  However, because the Truck is

currently located in Utah and because it would apparently be difficult and expensive to relocate it

to Iowa, Plaintiff might be slightly more inconvenienced than a typical plaintiff if it were required to litigate the case in Iowa.

### d.  Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor asks whether the forum state is the most efficient place to litigate the dispute. *Pro Axess*, 428 F.3d at 1281.  In evaluating this factor, courts look to the location of witnesses, the location of the underlying wrong, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.  *Id.*  The location of the witnesses in this case is likely split fairly evenly between Iowa and Utah.  Likewise, the wrong underlying the lawsuit—ST&E's alleged fraud—occurred both in Iowa and Utah.  Although the purported misrepresentations were technically made from a phone or computer in Iowa, they were received and relied upon in Utah.  Finally, it has yet to be determined whether Utah law or Iowa law would apply in this case, or if the law of the two forums even differs on the relevant issues.  *OMI Holdings, Inc.*, 149 F.3d at 1097.

### e.  States' Interest in Furthering Fundamental Substantive Social Policies

The fifth factor of the reasonableness inquiry focuses on whether the exercise of personal jurisdiction by the forum state affects the "substantive social policy interests of other states or foreign nations."  *OMI Holdings*, 149 F.3d at 1097.  The court finds no facts suggesting that the exercise of personal jurisdiction in Utah would affect the substantive social policy interests of any other state or foreign nation.

After evaluating the relevant factors, the court finds that ST&E has failed to establish a "compelling case" that the exercise of jurisdiction would be unreasonable.  *Burger King*, 471

U.S. at 477.  Accordingly, the court concludes that exercising personal jurisdiction over ST&E would not offend traditional notions of fair play and substantial justice.

## Venue

Venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (quoting 28 U.S.C. § 1391(a)(2)).  Courts "conduct a two-part analysis when reviewing challenges to venue under § 1391(a)(2)." *Id.* at 1166.  First, courts "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.*  Second, "[courts] determine whether substantial 'events material to those claims occurred' in the forum [state]." *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). Under this inquiry, "venue is not limited to the district with the most substantial events or omissions." *Id.* at 1165.  In other words, "[a] venue does not have to be the 'best' venue to be a 'proper' venue." *Diesel Power Source, L.L.C. v. Crazy Carl's Turbos Inc.*, 2015 WL 1034231 at *9.

In this case, Red Oaks' claims arise out of (1) ST&E's alleged misrepresentations and omissions during its negotiation of the sale of the Truck to Red Oaks; and (2) ST&E's sale of the Truck.  These acts occurred in Utah, as did Red Oaks' harm.

Red Oaks acknowledges in its brief that ST&E was not physically present in Utah when it made the misrepresentations and omissions at issue.  However, ST&E similarly knew that Red Oaks was located in Utah during the negotiations.  The misrepresentations were received and relied on in Utah, and the ultimate harm—the consummation of the transaction and Red Oaks' loss—occurred in Utah.  These events are "substantial."  Venue is proper in this court.

## <u>CONCLUSION</u>

Having determined that ST&E has sufficient minimum contacts with this forum, and having further determined that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice, the court concludes that ST&E is subject to personal jurisdiction in this court.  Additionally, because a substantial part of the events giving rise to Red Oaks' claim occurred in Utah, the court concludes that venue is proper.  Accordingly, a family owned company in Iowa may indeed be haled into Utah courts under the facts of this case. ST&E's motion to dismiss is DENIED.

DATED this 21st day of July, 2015.

BY THE COURT:

Dee Benson
United States District Judge

16